### BEAUMON v. THOMAS, Administrator.

The sale of a thing belonging to another is null. C. C. 2427.

APPEAL from the Court of Probates of Avoyelles, *Baillio*, J. *Cushman*, for the plaintiff. *Taylor* and *Swayze*, for the defendant.

The judgment of the court was pronounced by

ROST, J. We consider the following facts as proved in this case : *Edward Yorke*, a commission merchant in the city of New Orleans, and, at the time the note sued on was given, the president of the Exchange and Banking Com-

pany, agreed to make advances in money to *Daniel T. Orr*, a planter, who entrusted him with the sale of his crops. To secure the payment of any balance on those advances, not covered by the proceeds of the crops, *Daniel T. Orr* subscribed to *Yorke's* order, a note for the sum of $10,000, bearing date the 12th of April, 1839, payable in one year, and bearing ten per cent interest from date. The payment of that note was secured by a mortgage on land and slaves, which was not recorded in the parish where they are situated during the lifetime of the mortgagor.

*Yorke* made advances according to promise, and, on the 30th of March, 1840, the accounts rendered by him show a balance in his favor of $11,237 95, after crediting *Daniel T. Orr* with the proceeds of the crop of the previous year. The note was then really due, and it was accordingly protested at maturity, at the request, and by the notary, of the Exchange and Banking Company. No entry appears to have been made of it in the books of the bank, nor was it ever entered in the books of *Yorke*, either to the debit of the account of *Daniel T. Orr*, or to the credit thereof, for its nett proceeds, as having been discounted in bank by the holder. *Yorke* continued to make advances to *Orr*, and to sell his crops, and, in June, or July, 1842, the agent of *Yorke* called on *Orr* personally at his plantation, and presented him his account, which reduced the general balance against him to $7,370 40. *Orr* acknowledged that the account was correct, except as to the proceeds of the sale of ten bales of cotton, about $220, which had not been credited. A short time before this occurrence, *Orr* had been garnisheed by a creditor of *Yorke's*, and had stated in answer to the interrogatories put to him that the balance due by him to *Yorke* equalled the sum of $3,000. The sheriff had attached in his hands the balance due, whatever it might be.

Judgment was rendered in favor of the attaching creditor for the sum of $8,587 25, with legal interest; and, in part satisfaction of that judgment, the seizing creditor gave *Daniel T. Orr* the following receipt:

"Received of *Dr. Daniel T. Orr* all dues and demands as attached in his hands at the suit of *James M. Wells* v. *Edward Yorke*, being the full amount of the balance due by *Daniel T. Orr* to *Edward Yorke* at the time of the above mentioned attachment."

*Yorke* absconded, in March, 1842, and the note sued on appears to have been found, with others, in the room of the president and cashier of the Exchange Bank. The name of *Yorke* is not upon it. Nothing shows that it was ever discounted by the bank, and no written act of pledge in relation to it is found in the books of the institution. After the disappearance of *Yorke*, the assetts of the bank were sequestered, and an inventory was made. This note is described therein as one of the securities of the bank. *Yorke* owed the bank then about $200,000. The assets were subsequently delivered to the commissioners appointed to administer them, and *James B. Hullin*, one of them, who appears to have been more particularly charged with the administration, testifies in substance as follows:

During my administration I remember seeing this note among the papers of the bank. On an examination, at the time, I could not discover that the bank had any legal claim on it, by having discounted the same, by pledge, or otherwise. I caused the said note to be advertised at sheriff's sale, under a judgment against *Yorke*, but withdrew it on the day of sale, because I had received information that *James M. Wells* had attached the amount due by *Daniel T. Orr* to *Edward*

BEAUMON
*v.*
THOMAS.

*Yorke,* and because, under the circumstances, I was unwilling to cause a security to be sold about which there was so much doubt. I always understood that the bank had no right of property in the note ; and I was the principal manager till April, 1843, when I resigned.

Subsequently this note was sold at auction, with the other assets of the bank, and adjudicated to the plaintiff. *Daniel T. Orr,* being dead at the time, the plaintiff has instituted this action against the administrator of his succession, to recover the amount of the note, and interest thereon at the rate of ten per cent per annum from its date. Judgment was rendered in his favor in the court below, and the defendant appealed.

The mere statement of the case shows that the defendant is entitled to a reversal of the judgment. The note sued on was not an original obligation. It was given as security for advances to be made, and is a mere accessary to the subsequent obligation contracted by the maker towards *Edward Yorke,* in receiving those advances from him. That note could not belong to the bank, while the balance due on the account continued to belong to *Yorke.* The fact that the note was protested at the request of the bank, does not, under all the circumstances, raise even a presumption of ownership in its favor. The commissioners of the bank, in causing that note to be sold at auction, sold the thing of another. The sale is consequently void, and the plaintiff has acquired no right under it. Civil Code, art. 2437.

We express no opinion upon the question, whether the receipt given by *James M. Wells* to *Daniel T. Orr,* is a full discharge of all the claims of *Edward Yorke* against him. If it should not be, the balance remaining due belongs to *Yorke.* The plaintiff cannot claim it under the adjudication.

It is therefore ordered that the judgment be reversed, and that there be judgment in favor of the defendant, with costs in both courts.